# EXHIBIT E

# OPERATING AGREEMENT
## OF
# GMAX, LLC

**THIS OPERATING AGREEMENT**, is effective as of March 15, 1999, by and among the undersigned parties, who by their execution of this Operating Agreement have become members of **GMAX, LLC**, a Michigan limited liability company (the "Company"), provides as follows:

## RECITALS:

The undersigned parties have caused the Company to be organized as a limited liability company under the laws of the state of Michigan effective as of the date hereof, and they wish to enter into this Operating Agreement to set forth the terms and conditions on which the management, business and financial affairs of the Company shall be conducted.

## AGREEMENT:

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual promises, covenants and conditions herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby covenant and agree as follows:

## ARTICLE I
## DEFINITIONS

1.01    The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein):

(a)    "Act" shall mean the Michigan Limited Liability Company Act, Act 23, Michigan Public Acts of 1993, as amended and in force from time to time.

(b)    "Articles" shall mean the articles of organization of the Company, as amended and in force from time to time.

(c)    "Capital Account" shall mean as of any given date the amount calculated and maintained by the Company for each Member as provided in Section 6.04 hereof.

(d)    "Capital Contribution" shall mean any contribution to the capital of the Company by a Member in cash, property or services, or a binding obligation to contribute cash, property or services, whenever made.  "Initial Capital Contribution" shall mean the initial contribution to the capital of the Company by a Member, as determined pursuant to Section 6.01 hereof.

(e)     "Code" shall mean the Internal Revenue Code of 1986, as amended or corresponding provisions of subsequent superseding federal revenue laws.

(f)     "Company" shall refer to **GMAX, LLC**.

(g)     "Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative or other association.

(h)     "Manager" shall mean a manager of the Company, whose rights, powers and duties are specified in Article V hereof.

(i)     "Member" shall mean each Person that is identified as an initial Member in Article III hereof or is admitted as a Member (either as a transferee of a Membership Interest or as an additional Member) as provided in Article VIII hereof. A Person shall cease to be a Member at such time as he no longer owns any Membership Interest.

(j)     "Membership Interest" shall mean the ownership interest of a Member in the Company, which may be expressed as a percentage equal to the number of Units owned by such Member divided by the aggregate number of Units owned by all Members. The Membership Interests may be recorded from time to time on a schedule attached to this Operating Agreement.

(k)     "Operating Agreement" shall mean this Operating Agreement, as originally executed and as amended from time to time.

(l)     "Person" shall mean any natural person or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such Person where the context so admits.

(m)     "Units" shall mean the shares of Membership Interest in the Company. Each of the Members has made a Capital Contribution and owns the number of Units specified on Schedule 6.01 attached hereto.

## ARTICLE II
## PURPOSES AND POWERS OF COMPANY

2.01    Purposes. The purpose of the Company is to engage in any activity for which limited liability companies may be formed under the Act, including owning real estate. The Company shall have all the powers necessary or convenient to effect any purpose for which it is formed, including all powers granted by the Act.

2

GMAX000002

2.02    Powers.  The Company shall have all powers and rights of a limited liability company organized under the Act, to the extent such powers and rights are not proscribed by the Articles.

## ARTICLE III
## NAMES AND ADDRESSES OF INITIAL MEMBERS; PRINCIPAL OFFICE

3.01    Names and Addresses of Initial Members.  The names and addresses of the initial Members are as provided on Schedule 3.01 attached hereto, as amended and updated from time to time.

3.02    Principal Office.  The principal office of the Company shall initially be at 4162 Doerr Road, Cass City, Michigan 48726.  The principal office may be changed from time to time by the Managers.

## ARTICLE IV
## VOTING POWERS, MEETINGS, ETC. OF MEMBERS

4.01    In General.  The Members shall not be entitled to participate in the day-to-day affairs and management of the Company, but instead, the Members' right to vote or otherwise participate with respect to matters relating to the Company shall be limited to those matters as to which the express terms of the Act, the Articles or this Operating Agreement vest in the Members the right to so vote or otherwise participate.

4.02    Actions Requiring Approval of Members.

(a)    Notwithstanding any other provision of this Operating Agreement, the approval of the Members shall be required in order for any of the following actions to be taken on behalf of the Company:

(i)    amending the Articles or this Operating Agreement in any manner that materially alters the preferences, privileges or relative rights of the Members.

(ii)    the dissolution of the Company;

(iii)    the merger of the Company with another limited liability company or Business Organization as that term is described in Section 705a(1)(a) of the Act.

(iv)    electing or removing the Managers as provided in Article V hereof.

GMAX000003

   (v) selling, transferring, assigning, conveying, exchanging or otherwise disposing of all or substantially all of the assets of the Company, or entering into contracts for any of the foregoing purposes.

   (vi) admitting additional Members to the Company.

   (b) Except for the voting provisions under Section 5.02, and unless the terms of this Operating Agreement specifically provide otherwise, the affirmative vote of the Members holding a majority of the Membership Interests shall be necessary and sufficient in order to approve or consent to any of the matters set forth in Section 4.02(a) above.

  4.03 <u>Action by Members</u>. In exercising their rights as provided above, the Members shall act collectively through meetings and/or written consents as provided in this Article.

  4.04 <u>Annual or Special Meetings</u>. Annual or special meetings of the Members, for any purpose or purposes, unless otherwise prescribed by statute, may be called by the Managers, and shall be called by the Managers at the request of any two Members, or such lesser number of Members as are Members of the Company.

  4.05 <u>Place of Meeting</u>. The place of any meeting of the Members shall be the principal office of the Company, unless another place, either within or outside the state of Michigan, is designated by the Managers.

  4.06 <u>Notice of Meetings</u>. Written notice stating the place, day and hour of any meeting of the Members shall be delivered not less than 3 nor more than 30 days before the date of the meeting, either personally or by mail, by or at the direction of the Managers, to each Member, unless the Act or the Articles require different notice.

  4.07 <u>Conduct of Meetings</u>. All meetings of the Members shall be presided over by a chairperson of the meeting, who shall be a Manager, or a Member designated by the Managers. The chairperson of any meeting of the Members shall determine the order of business and the procedure at the meeting, including regulation of the manner of voting and the conduct of discussion, and shall appoint a secretary of such meeting to take minutes thereof.

  4.08 <u>Participation by Telephone or Similar Communications</u>. Members may participate and hold a meeting by means of conference telephone or similar communications equipment by means of which all Members participating can hear and be heard, and such participation shall constitute attendance and presence in person at such meeting.

GMAX000004

4.09    Waiver of Notice.  When any notice of a meeting of the Members is required to be given, a waiver thereof in writing signed by a Member entitled to such notice, whether given before, at, or after the time of the meeting as stated in such notice, shall be equivalent to the proper giving of such notice.

4.10    Action by Written Consent.  Any action required or permitted to be taken at a meeting of Members may be taken without a meeting if one or more written consents to such action are signed by the Members who are entitled to vote on the matter set forth in the consents and who constitute the requisite number or percentage of such Members necessary for adoption or approval of such matter on behalf of the Company.  By way of example and not limitation, the Members holding a majority of the Membership Interests may take action as to any matter specified in Section 4.02 hereof by signing one or more written consents approving such action, without obtaining signed written consents from any other Members.  Such consent or consents shall be filed with the minutes of the meetings of the Members.  Action taken under this Section shall be effective when the requisite Members have signed the consent or consents, unless the consent or consents specify a different effective date.

## ARTICLE V
## MANAGERS

5.01    Powers of Manager.  Except as expressly provided otherwise in the Act, the Articles or this Operating Agreement, the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed by, one or more Managers.  The powers so exercised shall include but not be limited to the following:

(a)    Entering into, making and performing contracts, agreements and other undertakings binding the Company that may be necessary, appropriate or advisable in furtherance of the purposes of the Company.

(b)    Opening and maintaining bank accounts, investment accounts and other arrangements, drawing checks and other orders for the payment of money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements.  Company funds shall not be commingled with funds from other sources and shall be used solely for the business of the Company.

(c)    Collecting funds due to the Company.

(d)    Acquiring, utilizing for the Company's purposes, maintaining and disposing of any assets of the Company, including without limitation, real property.

GMAX000005

(e)     To the extent that funds of the Company are available therefor, paying debts and obligations of the Company.

(f)     Borrowing money or otherwise committing the credit of the Company for Company activities, and voluntarily prepaying or extending any such borrowings; and securing such borrowings by mortgage, pledge or other lien on any Company property, and modifying the terms of such borrowings.

(g)     Employing from time to time persons, firms or corporations for the operation and management of various aspects of the Company's business, including, without limitation, managing agents, contractors, subcontractors, architects, engineers, laborers, suppliers, accountants and attorneys on such terms and for such compensation as the Managers shall determine, notwithstanding the fact that the Managers or any Member may have a financial interest in such firms or corporations.

(h)     Making elections available to the Company under the Code.

(i)     Obtaining general liability, property and other insurance for the Company, as the Managers deem proper.

(j)     Taking such actions as may be directed by the Members in furtherance of their approval of any matter set forth in Section 4.02 hereof.

(k)     Doing and performing all such things and executing, acknowledging and delivering any and all such instruments as may be in furtherance of the Company's purposes and necessary and appropriate to the conduct of its business.

(l)     Purchasing or otherwise acquiring an interest in any real or personal property, and entering into contracts for any of the foregoing purposes, on such terms and conditions as the Manager(s) deem appropriate.

5.02    Election, Etc. of Managers.

(a)     The Members hereby unanimously elect **Roger W. Marshall** as the initial Manager(s) of the Company, to serve until his respective successors shall be duly elected and qualified.

(b)     If any Person resigns or otherwise vacates the office of Manager, the Members shall elect a replacement Manager unless one or more other Persons then serve as Managers and the Members determine not to fill such vacancy. In addition, a Person may be removed as a Manager by the Members with or without cause at any time. A

GMAX000006

Manager may, but shall not be required to, be elected from among the Members. A Manager may be a natural person or an Entity. In the event it is necessitated that the Company and its Members remove a Manager or elect any new Manager to serve either concurrently with or consecutive to the initial Manager, the affirmative vote of two-thirds (2/3) of the Members shall be required to approve the same, and all such votes shall otherwise be governed under the provisions of Article IV.

5.03    Action by Two or More Managers. Unless otherwise expressly provided by the Act, the Articles, or the terms of this Operating Agreement, the vote, approval or consent of a majority of the Managers, determined on a per capita basis, shall be necessary and sufficient for the Managers to take any action on behalf of the Company that the Managers are authorized to take pursuant to the Act, the Articles or this Operating Agreement.

5.04    Execution of Documents and Other Actions. The Managers may delegate to one or more of their number the authority to execute any documents or take any other actions deemed necessary or desirable in furtherance of any action that they have authorized on behalf of the Company as provided in Section 5.03 hereof.

5.05    Single Manager. If at any time there is only one Person serving as a Manager, such Manager shall be entitled to exercise all powers of the Managers set forth in this Section, and all references in this Section and otherwise in this Operating Agreement to "Managers" shall be deemed to refer to such single Manager.

5.06    Reliance by Other Persons. Any Person dealing with the Company, other than a Member, may rely on the authority of a particular Manager or Managers in taking any action in the name of the Company, if such Manager or Managers provide to such Person a copy of the applicable provision of this Operating Agreement and/or the resolution or written consent of the Managers or Members granting such authority, certified in writing by such Manager or Managers to be genuine and correct and not to have been revoked, superseded or otherwise amended.

5.07    Manager's Expenses and Fees. A Manager shall be entitled, but not required, to receive a reasonable salary for services rendered on behalf of the Company or in his capacity as a Manager. The Company shall reimburse any Manager for reasonable out-of-pocket expenses that were or are incurred by the Manager on behalf of the Company with respect to the start-up or operation of the Company, the on-going conduct of the Company's business, or the dissolution and winding up of the Company and its business.

5.08    Competition. During the existence of the Company, the Managers shall devote such time to the business of the Company as may reasonably be required to conduct

GMAX000007

its business in an efficient and profitable manner. The Managers, for their own account and for the account of others, may engage in business ventures, which are in competition with Company. The Managers shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture.

5.9     Indemnification. The Company shall indemnify each Manager, whether serving the Company or, at its request, any other Entity, to the full extent permitted by the Act. The foregoing rights of indemnification shall not be exclusive of any other rights to which the Managers may be entitled. The Managers may, upon the approval of the Members, take such action as is necessary to carry out these indemnification provisions and may adopt, approve and amend from time to time such resolutions or contracts implementing such provisions or such further indemnification arrangements as may be permitted by law.

5.10     Liability of Managers. So long as the Managers act in good faith with respect to the conduct of the business and affairs of the Company, no Manager shall be liable or accountable to the Company or to any of the Members, in damages or otherwise, for any error of judgment, for any mistake of fact or of law, or for any other act or thing that he may do or refrain from doing in connection with the business and affairs of the Company, except for willful misconduct or gross negligence or breach of fiduciary duty, and further except for breaches of contractual obligations or agreements between the Managers and the Company.

## ARTICLE VI
## CONTRIBUTIONS TO THE COMPANY AND DISTRIBUTIONS

6.01     Initial Capital Contributions. Each Member, upon the execution of this Operating Agreement, shall make as an initial Capital Contribution the amount shown on Schedule 6.01, which is attached hereto. The initial Capital Contribution to be made by any Person who hereafter is admitted as a Member and acquires his Membership Interest from the Company shall be determined by the Members.

6.02     Additional Capital Contributions. The Managers may determine from time to time that additional capital contributions are needed to enable the Company to conduct its business and affairs. After making such a determination, notice of it shall be given to all Members in writing at least 10 business days before the date on which the additional contributions are due. The notice shall describe in reasonable detail the purposes and uses of the additional capital, the amounts of additional capital required, and the date by which payment of the additional capital is due.

If a Member fails to make a capital contribution when required, the Company may, in addition to pursuing any other rights and remedies the Company may have under the Act

8

GMAX000008

or applicable law, take any enforcement action (including the commencement and prosecution of court proceedings) against the Member that the Managers consider appropriate. Moreover, the remaining Members may elect to contribute the required capital themselves, according to their respective Membership Interests. The Members who make such contributions shall be entitled to treat these amounts as an extension of credit to the defaulting Member, payable on demand, with interest accruing on the extension at the rate of seven percent (7%) per annum until paid. This extension of credit shall be secured by the defaulting Member's interest in the Company. Each Member who defaults grants to each Member who may later grant an extension of credit a security interest in the defaulting Member's interest in the Company and such defaulting Member agrees to execute any document necessary to perfect such security interest.

6.03    Interests and Return of Capital Contribution. No Member shall receive any interest on his Capital Contribution. Except as otherwise specifically provided for herein, the Members shall not be allowed to withdraw or have refunded any Capital Contribution.

6.04    Capital Accounts. Separate Capital Accounts shall be maintained for each Member in accordance with the following provisions:

(a)    To each Member's Capital Account there shall be credited the fair market value of such Member's Initial Capital Contribution and the fair market value of any additional Capital Contributions, such Member's distributive share of profits, and the amount of any Company liabilities that are assumed by such Member.

(b)    To each Member's Capital Account there shall be debited the amount of cash and the fair market value of any Property distributed to such Member pursuant to any provision of this Operating Agreement, such Member's distributive share of losses, and the amount of any liabilities of such Member that are assumed by the Company or that are secured by any property contributed by such Member to the Company.

(c)    In the event any interest in the Company is transferred in accordance with the terms of this Operating Agreement, the transferee shall succeed to the Capital Account of the transferor in proportion to the percentage of the transferor's interest transferred.

(d)    The Capital Account shall also include a pro rata share of the fair market value of any property contributed by a person who is not a Member, such value to be the same value reported for federal gift tax purposes if a gift tax return is filed, and if not, the value in the case of real property shall be determined by an independent appraiser actively engaged in appraisal work in the area where such property is located and selected by the Managers, and otherwise by the certified public accountant or accountants then serving the Company.

GMAX000009

(e)     If any Member makes a non-pro rata Capital Contribution to the Company or the Company makes a non-pro rata distribution to any Member, the Capital Account of each Member shall be adjusted to reflect the then fair market value of the assets held by the Company immediately before the Capital Contribution or distribution.

6.05    <u>Loans to the Company</u>.  If the Company has insufficient funds to meet its obligations as they come due and to carry out its routine, day-to-day affairs, then, in lieu of obtaining required funds from third parties or selling its assets to provide required funds, the Company may, but shall not be required to, borrow necessary funds from one or more of the Members as designated by the Managers; provided that the terms of such borrowing shall be commercially reasonable and the Company shall not pledge its assets to secure such borrowing.

6.06    <u>Distributions</u>.  All distributions of cash or other property (except upon the Company's dissolution, which shall be governed by the applicable provisions of the Act and Article IX hereof) shall be made to the Members in proportion to their respective Membership Interests.  All distributions of cash or property shall be made at such time and in such amounts as determined by the Managers.  All amounts withheld pursuant to the Code or any provisions of state or local tax law with respect to any payment or distribution to the Members from the Company shall be treated as amounts distributed to the relevant Member or Members pursuant to this Section.

6.07    <u>Allocations</u>.  Except as otherwise provided in Section 6.08 hereof, all items of income, gain, loss, deduction and credit, whether resulting from the Company's operations or in connection with its dissolution, shall be allocated to the Members for federal, state and local income tax purposes in proportion to their respective Membership Interests.

6.08    <u>Allocation with Respect to Property</u>.  If, at any time during the Company's existence, any Member contributes to the Company property with an adjusted basis to the contributing Member which is more or less than the agreed fair market value and such property is accepted by the Company at the time of its contribution, the taxable income, gain, loss, deductions and credits with respect to such contributed property for tax purposes only (but not for purposes of calculating the Members' respective Capital Accounts) shall be shared among the Members so as to take account of the variation between the basis of the property to the Company and its agreed fair market value at the time of contribution, pursuant to Section 704(c) of the Code.

GMAX000010

## ARTICLE VII
## RECORDS, REPORTS, ETC.

7.01    _Records_.  The Company shall maintain and make available to the Members its records to the extent provided in the Act.

7.02    _Financial and Operating Statements and Tax Returns_.  Within seventy-five (75) days from the close of each fiscal year of the Company, the Managers shall cause to be delivered to each Member a statement setting forth such Member's allocable share of all tax items of the Company for such year, and all such other information as may be required to enable each Member to prepare his federal, state and local income tax returns in accordance with all then applicable laws, rules and regulations.  The Managers also shall cause to be prepared and filed all federal, state and local income tax returns required of the Company for each fiscal year.

7.03    _Banking_.  The funds of the Company shall be kept in one or more separate bank accounts in the name of the Company in such banks or other federally insured depositories as may be designated by the Managers, or shall otherwise be invested in the name of the Company in such manner and upon such terms and conditions as may be designated by the Managers.  All withdrawals from any such bank accounts or investments established by the Managers hereunder shall be made on such signature or signatures as may be authorized from time to time by the Managers.  Any account opened by the Managers for the Company shall not be commingled with other funds of the Managers or interested persons.

7.04    _Power of Attorney_.

(a)     Each Member does hereby irrevocably constitute and appoint the Managers serving in office from time to time, and each of them, as such Member's true and lawful attorney, in his name, place and stead, to make, execute, consent to, swear to, acknowledge, record and file from time to time any and all of the following:

(i)     Any certificate or other instrument that may be required to be filed by the Company or the Members under the laws of the state of Michigan or under the applicable laws of any other jurisdiction in order to conduct business in any such jurisdiction, to the extent the Managers deem any such filing to be necessary or desirable.

(ii)    Any amendment to the Articles adopted as provided in this Operating Agreement.

GMAX000011

(iii)    Any certificates or other instruments that may be required to effectuate the dissolution and termination of the Company pursuant to the provisions of this Operating Agreement.

(b)    It is expressly understood, intended and agreed by each Member for himself, his successors and assigns that the grant of the power of attorney to the Managers pursuant to subsection (a) is coupled with an interest, is irrevocable, and shall survive the death or legal incompetency of the Member or such assignment of his Membership Interest.

(c)    One of the ways that the aforementioned power of attorney may be exercised is by listing the names of the Members and having the signature of the Manager or Managers, as attorney-in-fact, appear with the notation that the signatory is signing as attorney-in-fact of the listed Members.

## ARTICLE VIII
## ASSIGNMENT; RESIGNATION

8.01    <u>Assignment Generally</u>.  Each Member hereby covenants and agrees that he will not sell, assign, transfer, mortgage, pledge, encumber, hypothecate or otherwise dispose of all or any part of his interest in the Company to any person, firm, corporation, trust or other entity.  No assignee of a Membership Interest shall become a Member of the Company except upon the consent of a majority of the non-assigning Membership Interests.

8.02    <u>Absolute Prohibition</u>.  Notwithstanding any other provision in this Article VIII, the Membership Interest of a Member, in whole or in part, or any rights to distributions therefrom, shall not be sold, exchanged, conveyed, assigned, pledged, hypothecated, subjected to a security interest or otherwise transferred or encumbered, if, as a result thereof, the Company would be terminated for federal income tax purposes in the opinion of counsel for the Company or such action would result in a violation of federal or state securities laws in the opinion of counsel for the Company.

8.03    <u>Persons Acquiring Membership Interest from Company</u>.  No Person, other than the initial Members, who acquires a Membership Interest from the Company, shall be admitted as a Member of the Company, except upon the consent of a majority of the Membership Interests.

8.04    <u>Resignation</u>.  Any Member may elect to resign from the Company and to sell his entire interest in the Company to the Company at any time by serving written notice of such election upon the Company.  Such notice shall set forth the date upon which such resignation shall become effective, which shall be not less than sixty (60) days and not more

GMAX000012

than ninety (90) days from the date of such notice. The purchase price for a Resigning Member's interest in the Company shall be One Dollar ($1.00). Members shall have no other rights upon resignation or withdrawal from the Company.

8.05   <u>Effect of Prohibited Action</u>. Any transfer or other action in violation of this Article shall be void <u>ab</u> <u>initio</u> and of no force or effect whatsoever.

8.06   <u>Expulsion</u>. A Member may be expelled upon a vote of the Members representing at least three quarters (75%) of the Membership Interests in the Company. In the event of expulsion, a Member's Membership Interest will be subject to the Buy and Sell Provisions of Section 8.08.

8.07   <u>Rights of an Assignee</u>. If an assignee of a Membership Interest is not admitted as a Member, such assignee shall nevertheless be entitled to receive such distributions from the Company as the assigning Member would have been entitled to receive under Sections 6.06 and 9.04(c) of this Operating Agreement with respect to such Membership Interest had the assigning Member retained such Membership Interest.

8.08   <u>Purchase of Certain Membership Interests</u>.

(a)     If an Option Event (as defined below) occurs with respect to any Member (an "Option Member"), the Company shall have the option to purchase the Option Member's Membership Interest upon the terms and conditions set forth in this Section 8.07. For purposes of the foregoing, an "Option Event" shall mean (i) the death of an individual Member, (ii) the sale, merger, dissolution or reorganization of any corporate Member, (iii) any assignment by a Member for the benefit of his creditors, (iv) the filing by a Member of a voluntary petition in bankruptcy or similar insolvency proceedings, (v) the filing against a Member of an involuntary petition in bankruptcy or similar insolvency proceeding that is not dismissed within ninety (90) days thereafter, or (vi) expulsion of a Member. The term "Option Member" shall include an Option Member's personal representative or trustee in bankruptcy, to the extent applicable.

(b)     Upon any Option Event occurring to an Option Member, the Option Member shall deliver written notice of the occurrence of such Option Event to the Company. The Company shall have the option, but not the obligation, to purchase the Option Member's Membership Interest at any time during the sixty (60) day period immediately following the date on which it receives notice of the occurrence of the Option Event. Such option shall entitle the Company to purchase such Membership Interest for the fair market value of such Membership Interest. The fair market value of the interest shall be mutually determined by the Option Member and the Company and in the absence of mutual agreement by a disinterested appraiser as provided in Section 8.08(d). The consent of all the Managers shall be required to authorize the exercise of such option by the

GMAX000013

Company. Such option must be exercised by delivery of a written notice from the Company to the Option Member during the aforementioned period. Upon delivery of such notice the exercise of such option shall be final and binding on the Company and the Option Member.

(c)     If the foregoing option is not exercised, the business of the Company shall continue, and the Option Member shall retain its Membership Interest.

(d)     The fair market value of the Option Member's Membership Interest shall be determined as expeditiously as possible by a disinterested appraiser mutually selected by the Option Member and the Company (the Company's selection being made by the Managers). If the Option Member and the Company are unable to agree on a disinterested appraiser, then the Option Member and the Company shall each select a disinterested appraiser and if the disinterested appraisers selected are not able to agree as to the fair market value of the interest, then the two disinterested appraisers shall select a third disinterested appraiser who shall determine the fair market value. The determination of the fair market value of the Option Member's Membership Interest by the appraiser or appraisers shall be conclusive and binding on all parties. All costs of an appraiser mutually selected by the Option Member and the Company or the two disinterested appraisers shall be shared equally by the Option Member and the Company. All costs of an individually selected appraiser shall be borne by the parties selecting such appraiser.

(e)     If the option to purchase the Option Member's Membership Interest is exercised by the Company, then not later than thirty (30) days after the date on which the appraisal described above is complete (the "Appraisal Date"), the Company shall make a distribution of property (which may be cash or other assets of the Company) to the Option Member with a value equal in amount to the fair market value of the Option Member's Membership Interest; provided, however, that at the election of the Company such distribution to the Option Member may be made in five (5) equal annual installments, the first of which shall be made on the thirtieth (30th) day after the Appraisal Date and one of which shall be made on the same date in each of the four years thereafter, provided, further, however, that notwithstanding an election by the Company to make the distribution to the Option Member in five equal annual installments, the Company may accelerate without penalty all of such installments at any time or any part of such installment at any time. If the Company elects to make distributions to the Option Member in five equal annual installments as provided herein, the Company, in addition to such annual installments, shall pay the Option Member additional amounts computed as if the Option Member were entitled to interest on the undistributed amount of the total distribution to which the Option Member is entitled hereunder at an annual rate equal to the annual Federal Mid-Term Rate in effect under Section 1274(d) of the Code, as determined on the 30th day after the Appraisal Date, which additional amounts, computed like interest, shall be due and payable on the same dates as the annual installments of the

GMAX000014

distribution payable to the Option Member hereunder. Any unpaid capital contributions of the Option Member and any damages occurring to the Company as a result of the Option Event shall be taken into account in determining the net amount due the Option Member at the closing, and any excess of such unpaid capital contributions or damages over the amount due at closing shall be netted against subsequent installment payments as they become due.

(f)     If at a time when the Company has an option to purchase an Option Member's Membership Interest, it is prohibited from purchasing all or any portion of such Membership Interest pursuant to the Act or any loan agreement or similar restrictive agreement, the Option Member and the remaining Members shall, to the extent permitted by law, take appropriate action to adjust the value of the Company's assets from book value to a fair valuation based on accounting practices and principles that are reasonable under the circumstances in order to permit the Company to purchase such Membership Interest. If the Company becomes obligated to purchase an Option Member's Membership Interest under this Section and the above action cannot be taken or does not create sufficient value to permit the Company to do so, the Company shall be obligated to purchase the portion of the Membership Interest it is permitted to purchase.

(g)     In order to fund any obligations under this Operating Agreement, the Company or the Members may maintain such life insurance policies on the lives of one or more Members as the Members determine from time to time to be desirable.

8.09     <u>Agreement by Members</u>.  The Members may from time to time enter into written buy and sell agreements or agreements restricting the transfer of Membership Interests.  Any buy and sell agreements or other restrictive agreements duly executed by the Company and all of its Members shall control over the terms of this Operating Agreement pertaining to the restriction on the sale of a Member's Membership Interests.

8.10     <u>Section 754 Election</u>.  In the event of the transfer of a Membership Interest, the Company, if the person acquiring such Membership Interest so requests, and if the Managers, in their sole discretion, consent thereto, may elect pursuant to Code Section 754, or a corresponding provision of any future federal internal revenue law, to adjust the basis of the Company's property.  Each member hereby agrees to provide the Company with all information necessary to give effect to such election.  Any change in the amount of depreciation deducted by the Company or any change in the gain or loss of the Company for federal income tax purposes resulting from such election shall be allocated entirely to the transferee of the Membership Interest so transferred; provided however, neither the Membership Interest of any Member or the Capital Account of any Member shall be affected as a result of such election, and the making of such election shall have no effect except for federal income tax purposes.

GMAX000015

# ARTICLE IX
## DISSOLUTION AND TERMINATION

9.01    <u>Events of Dissolution</u>.  The Company shall be dissolved upon the first to occur of the following:

(a)    Any event that under the Act or the Articles requires dissolution of the Company, provided that the death, resignation, retirement, expulsion, bankruptcy, or dissolution of a member or occurrence of any other event that terminates the continued membership of a member in the Company shall not cause the dissolution of the Company;

(b)    The written consent of a majority of the Membership Interests to the dissolution of the Company; and

(c)    The entry of a decree of judicial dissolution of the Company as provided in the Act.

9.02    <u>Liquidation</u>. Upon the dissolution of the Company, it shall wind up its affairs and distribute its assets in accordance with the Act by the following methods or any combination thereof, as the Managers shall determine:

(a)    Selling the Company's assets and, after the payment of Company liabilities, distributing the net proceeds therefrom to the Members in proportion to their Membership Interests and in satisfaction thereof; and/or

(b)    Distributing the Company's assets to the Members in kind with each Member accepting an undivided interest in the Company's assets, subject to its liabilities, in satisfaction of his Membership Interest.  The interest conveyed to each Member in such assets shall constitute a percentage of the entire interests in such assets equal to such Member's Membership Interest.

9.03    <u>Orderly Liquidation</u>.  A reasonable time as determined by the Managers not to exceed eighteen (18) months shall be allowed for the orderly liquidation of the assets of the Company and the discharge of liabilities to the creditors so as to minimize any losses attendant upon dissolution.

9.04    <u>Distributions</u>. Upon liquidation, the Company assets (including any cash on hand) shall be distributed in the following order and in accordance with the following priorities:

(a)    First, to the payment of the debts and liabilities of the Company and the expenses of liquidation, including a sales commission to the selling agent, if any; then

GMAX000016

(b)    Second, to the setting up of any reserves that the Managers (or the person or persons carrying out the liquidation) deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company.  At the expiration of such period as the Managers (or the person or persons carrying out the liquidation) shall deem advisable, but in no event to exceed 18 months, the Company shall distribute the balance thereof in the manner provided in the following subsection; then

(c)    Third, to the Members in proportion to their respective Membership Interests.

(d)    In the event of a distribution in liquidation of the Company's property in kind, the fair market value of such property shall be determined by a qualified and disinterested appraiser, selected by the Managers (or the person or persons carrying out the liquidation), and each Member shall receive an undivided interest in such property equal to the portion of the proceeds to which he would be entitled under the immediately preceding subsection if such property were sold at such fair market value.

9.05    <u>Taxable Gain or Loss</u>.  Taxable income, gain and loss from the sale or distribution of Company property incurred upon or during liquidation and termination of the Company shall be allocated to the Members as provided in Section 6 above.

9.06    <u>No Recourse Against Members</u>.    Except as provided by law, upon dissolution, each Member shall look solely to the assets of the Company for the return of his Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the Capital Contribution of each Member, such Member shall have no recourse against any other Member.

**ARTICLE X**
**MISCELLANEOUS PROVISIONS**

10.01    <u>Attorneys' Fees</u>.  In the event any Member brings an action to enforce any provisions of this Operating Agreement against the Company or any other Member, whether such action is at law, in equity or otherwise, the prevailing party shall be entitled, in addition to any other rights or remedies available to it, to collect from the non-prevailing party or parties the reasonable costs and expenses incurred in the investigation preceding such action and the prosecution of such action, including but not limited to reasonable attorney's fees and court costs.

10.02    <u>Notices</u>. Whenever, under the provisions of the Act or other law, the Articles or this Operating Agreement, notice is required to be given to any Person, it shall not be

GMAX000017

construed to mean exclusively personal notice unless otherwise specifically provided, but such notice may be given in writing, by mail, addressed to the Company at its principal office from time to time and to any other Person at his address as it appears on the records of the Company from time to time, with postage thereon prepaid. Any such notice shall be deemed to have been given at the time it is deposited in the United States mail. Notice to a Person may also be given personally or by telegram or telecopy sent to his address as it appears on the records of the Company. The addresses of the initial Members as shown on the records of the Company shall originally be those set forth on Schedule 3.01 as provided in Article III hereof. Any Person may change his address as shown on the records of the Company by delivering written notice to the Company in accordance with this Section.

10.03  <u>Application of Michigan Law</u>. This Operating Agreement, and the interpretation hereof, shall be governed exclusively by its terms and by the laws of the state of Michigan, without reference to its choice of law provisions, and specifically the Act. The parties irrevocably submit to the jurisdiction of any state or federal court with jurisdiction in Tuscola County, Michigan, in any action arising out of this Operating Agreement, and agree that all claims in any action may be decided in either court, and waive to the fullest extent that they may effectively do so, the defense of an inconvenient forum.

10.04  <u>Amendments</u>. No amendment or modification of this Operating Agreement shall be effective except upon the unanimous written consent of the Members.

10.05  <u>Construction</u>. Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa.

10.06  <u>Headings</u>. The headings in this Operating Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Operating Agreement or any provision hereof.

10.07  <u>Waivers</u>. The failure of any party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

10.08  <u>Rights and Remedies Cumulative</u>. The rights and remedies provided by this Operating Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies. Such rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.

18

GMAX000018

10.09    Severability. If any provision of this Operating Agreement or the application thereof to any Person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

10.10    Heirs, Successors and Assigns.    Each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Operating Agreement, their respective heirs, legal representatives, successors and assigns.

10.11    Creditors.  None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditor of the Company.

10.12    Counterparts. This Operating Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

10.13    Entire Agreement.  This Operating Agreement sets forth all of the promises, agreements, conditions and understandings between the parties respecting the subject matter hereof and supersedes all prior negotiations, conversations, discussions, correspondence, memoranda and agreements between the parties concerning such subject matter.

10.14    Legal Counsel.    The Members acknowledge that Currie Kendall Polasky Meisel PLC, the legal counsel preparing this Operating Agreement, was representing the Company ("Company Counsel").  The Members have been advised by Company Counsel that a conflict exists between their individual interests and those of the other Members to this Operating Agreement, and have been advised to seek the advice of independent counsel.  The Members have been given all information necessary to make an informed decision with regard to this Operating Agreement and any claims against said law firm regarding any possible conflict of interest with regard to this Operating Agreement or its preparation are hereby waived.

**IN WITNESS WHEREOF**, the undersigned, being all the Members of the Company, hereby agree, acknowledge and certify that the foregoing Operating Agreement constitutes the sole and entire Operating Agreement of the Company, unanimously adopted by the Members of the Company as of the date first written above.

GMAX000019

**COMPANY:**

**GMAX, LLC**

By: _Roger W Marshall_
    **Roger W. Marshall**
    Its:    Manager

**MEMBERS:**

**MARSHALL DISTRIBUTING, INC.,** a
Michigan corporation

By: _Roger W Marshall_
    **Roger W. Marshall**
    Its:    Chief Executive Officer

**MCMURTER RACING, LTD.,** a
_Ontario,_ _____ corporation

By: _Rueben McMurter_
    **Rueben McMurter**
    Its:    President

**GAMMA SALES INC.,** a
_Ontario,_ _____ corporation

By: _Peter Ramsey_
    **Peter Ramsey**
    Its:    President

_S Ramsay_
**Sandra Ramsay**

**SHOEMAKER, INC.,** a
_Idaho_ _____ corporation

By: _Craig Shoemaker_
    **Craig Shoemaker**
    Its:    President

_Arron Hsuan_
**Yang Shang "Arron" Hsuan**

## Schedule 3.01

## Names and Addresses of Members

MARSHALL DISTRIBUTING, INC., a
Michigan corporation
4162 Doerr Road, *P.O. Box 113*
Cass City, Michigan 48726

MCMURTER RACING, LTD., a
*Ontario* corporation
53 Parkview Drive
Dorchester, Ont, Canada NOL 1G2

GAMMA SALES INC., a
*ONTARIO* corporation
4 Ontario Street *PO Box 791*
Orillia, Ont, Canada L3V 6H1

SHOEMAKER, INC., a
*Idaho* corporation
1362 Nova Lane
Meridian, ID 83642

Sandra Ramsay
4 Ontario Street *PO Box 791*
Orillia, Ont, Canada L3V 6H1

Yang Shang "Arron" Hsuan
5765 Yonge Street *PH305*
North York, Ont, Canada M2M 4H9

GMAX000021

# Schedule 3.01

## Names and Addresses of Members

MARSHALL DISTRIBUTING, INC., a
Michigan corporation
4162 Doerr Road
Cass City, Michigan 48726

MCMURTER RACING, LTD., an
Ontario corporation
53 Parkview Drive
Dorchester, Ont, Canada NOL 1G2

GAMMA SALES INC., an
Ontario corporation
4 Ontario Street
Orillia, Ont, Canada L3V 6H1

SHOEMAKER, INC., an
Idaho corporation
1362 Nova Lane
Meridian, ID 83642

Sandra Ramsay
4 Ontario Street
Orillia, Ont, Canada L3V 6H1

Yang Shang "Arron" Hsuan
5765 Yonge Street
North York, Ont, Canada M2M 4H9

**MEMBERS AFTER September 26, 2004 TRANSFERS:**

MARSHALL DISTRIBUTING, INC.,
a Michigan corporation
4162 Doerr Road
Cass City, Michigan 48726

MCMURTER RACING, LTD.,
an Ontario corporation
53 Parkview Drive
Dorchester, Ontario, Canada NOL 1G2

GAMMA SALES INC.,
an Ontario corporation
4 Ontario Street
Orillia, Ontario, Canada L3V 6H1

WESTERN POWER SPORTS, INC.
an Idaho corporation
601 E. Gowen Road
Boise, ID 83716

RAMSAY CORP.
an Ontario corporation
30 Tobin Court
London, Ontario, Canada N6K 3Y3

Yang Shang "Arron" Hsuan
5765 Yonge Street
North York, Ontario, Canada M2M 4H9

GMAX000022

# Schedule 3.01

## Names and Addresses of Members

**MEMBERS AFTER JANUARY 6, 2009 TRANSFERS:**

MARSHALL DISTRIBUTING, INC., a
Michigan corporation
4162 Doerr Road
Cass City, Michigan 48726

MCMURTER RACING, LTD., an
Ontario corporation
53 Parkview Drive
Dorchester, Ont, Canada N0L 1G2

MSG, INC.,
A Delaware corporation
4 Ontario Street
Orillia, Ont, Canada L3V 6H1

WESTERN POWER SPORTS, INC.
Idaho corporation
1362 Nova Lane
Meridian, ID 83642

RAMSAY CORP.,
an Ontario Canada Corporation
30 Tobin Court
London, Ontario, Canada N6K 3Y3

Yang Shang "Arron" Hsuan
5765 Yonge Street
North York, Ont, Canada M2M 4H9

**MEMBERS AFTER JANUARY 30, 2009 TRANSFERS:**

MARSHALL DISTRIBUTING, INC.,
a Michigan corporation
4162 Doerr Road
Cass City, Michigan 48726

MCMURTER RACING, LTD.,
an Ontario corporation
53 Parkview Drive
Dorchester, Ont, Canada N0L 1G2

MSG, INC.,
a Delaware corporation
4 Ontario Street
Orillia, Ont, Canada L3V 6H1

WESTERN POWER SPORTS, INC.
an Idaho corporation
1362 Nova Lane
Meridian, ID 83642

CJCO INC.,
a Delaware corporation
30 Tobin Court
London, Ont, Canada N6K 3Y3

Yang Shang "Arron" Hsuan
5765 Yonge Street
North York, Ont, Canada M2M 4H9

GMAX000023

**MEMBERS AFTER JANUARY 1, 2010 TRANSFERS:**

MARSHALL DISTRIBUTING, INC.,
a Michigan corporation
4162 Doerr Road
Cass City, Michigan 48726

MCMURTER RACING, LTD.,
an Ontario corporation
53 Parkview Drive
Dorchester, Ont, Canada N0L 1G2

MSG, INC.,
a Delaware corporation
4 Ontario Street
Orillia, Ont, Canada L3V 6H1

WESTERN POWER SPORTS, INC.
an Idaho corporation
1362 Nova Lane
Meridian, ID 83642

CJCO INC.,
a Delaware corporation
30 Tobin Court
London, Ont, Canada N6K 3Y3

Po-Chou Yang

_____

_____

**MEMBERS AFTER MARCH 31, 2010 TRANSFERS:**

MARSHALL DISTRIBUTING, INC.,
a Michigan corporation
4162 Doerr Road
Cass City, Michigan 48726

MSG, INC.,
a Delaware corporation
25 Hunter Valley Road
Orillia, Ont, Canada L3V 6H2

WESTERN POWER SPORTS, INC.,
an Idaho corporation
1362 Nova Lane
Meridian, ID 83642

CJCO INC.,
a Delaware corporation
30 Tobin Court
London, Ont, Canada N6K 3Y3

Po-Chou Yang

_____

_____

9,927,586.3\138501-00001
04/21/10 2:07 PM

GMAX000024